JONES, Judge.

STATEMENT OF THE CASE

On June 30, 1988 a West Carroll Parish grand jury returned a bill of indictment charging the defendant with the first degree murder of Deputy Sheriff Jeffery Gathings. The defendant was also indicted for assisting escape, conspiracy to commit murder and conspiracy to commit aggravated escape. The defendant initially pled guilty, but subsequently changed his plea to not guilty and not guilty by reason of insanity. At the defendant’s request, his cases were transferred to Franklin Parish, and finally to Plaquemines Parish. Trial on the murder charge was held in February, 1992. The defendant was found guilty as charged and, pursuant to the recommendation of the jury, was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.
On appeal the defendant argues six assignments of error.

STATEMENT OF THE FACTS

On April 30, 1988 the defendant, Frank Bancroft, was placed in the West Carroll Parish Jail for an unrelated theft charge. He was put in a cell with Frank Caston and Sonny Caston. He was moved out of the cell when he was made a trustee. While in jail together, the defendant and the Ca-stons planned an escape. When the defendant became a trustee, he obtained a chisel and a butcher knife for the Castons. to use in the escape. On June 14, 1988 the defendant was released. For the next few days he called the jail several times to “see about Frank and Sonny.”
On June 18, around 2:00 p.m., the defendant made a complaint when he attempted to call the Castons but was not put through because the Castons were with visitors. That night the defendant unhooked the boat from his stepfather’s 1978 Chevy pickup and pushed the truck out of the driveway. He then cranked up the truck and left for the jail. He took with him a 12-gauge shotgun and shells, a .22 rifle and a hatchet, which he placed in the truck with him.
*484 The defendant parked at a car dealership across the street from the jail. He waited until all the vehicles parked around the courthouse and jail were gone, and he could see that only Deputy Jeffery Gath-ings, who was acting as both the jailer and radio dispatcher, was left on duty. The defendant then pressed the buzzer to be admitted. Unbeknownst to Deputy Gath-ings, the defendant had hidden a hatchet under his clothes which could not be seen by the video camera outside the door. Deputy Gathings pressed the buzzer which released the lock and allowed the defendant to enter. The defendant entered and passed some time with Deputy Gathings. Deputy Jerry West came and went during that time.
After Deputy West left, the defendant asked Deputy Gathings if he could go back and talk to Frank and Sonny Caston. At this point, the defendant told the Castons to get their clothes on because he was going to “knock Jeff out with the hatchet.” The defendant went back to Deputy Gath-ings but decided not to use the hatchet, so he went outside and hid it. He then came back in and resumed his visit with Deputy Gathings until an air conditioning unit went out. The defendant helped trustee Eddie Burch fix the belt on the unit. When the defendant went to the tool and storage area with Burch, he obtained a cotton picker spindle welded to a pipe. After Burch returned to the trustees’ cell, the defendant requested and was granted a second visit to the Castons’ cell. At that time, he discussed hitting the victim in the head with the cotton picker spindle. However, the defendant and the Castons decided instead to use the shotgun. The defendant left the jail without closing the door completely, so that he would not arouse Deputy Gath-ings’s attention when he reentered with the shotgun. He left and moved the truck closer to the jail so that he would not be seen crossing the street with the shotgun.
The defendant reentered the jail with the shotgun, came to the half-door which separates the dispatcher’s area from the hallway, pointed the shotgun at Deputy Gath-ings’s face and pulled the trigger. The single contact gunshot wound was the cause of Deputy Gathings’s death. The defendant then took the keys from the desk, locked Eddie Burch and the other trustees in their cell and unlocked the Ca-stons’ cell. The defendant and the Castons left in the pick-up. On the morning of June 20th the defendant was apprehended in a bayou off of Lake Providence. The Caston brothers turned themselves in at the East Carroll Parish Courthouse.
At the trial, the State presented the various statements made by the defendant after the shooting of Deputy Gathings, including a recorded statement witnessed by State Trooper Buckley and by Chief Deputy Jerry Philley wherein the defendant admitted that he entered the jail planning to help the Castons escape and that in the process of helping the Castons escape he shot Deputy Jeffery Gathings. The State also presented lay testimony to show that the actions of the defendant immediately before the shooting and after the shooting appeared to be deliberate and planned. Additionally, Dr. Townsley testified that based on his interview with the defendant and the information made available to him, he was of the opinion that the defendant knew right from wrong at the time of the shooting.
The defense presented lay testimony to show that the defendant had a history of emotional problems and had left a suicide note on the day of the killing. The defense also presented expert testimony to show that the defendant suffered from a mental disorder which caused him to be in a dissociative state and unable to distinguish right from wrong at the time of the killing. Finally, the defense presented the testimony of Dr. Ross Keiser, a clinical psychologist who had previously hypnotized the defendant. Dr. Keiser testified that, by hypnosis of the defendant, he was able to confirm his suspicion that the defendant had a multiple personality disorder, which is a particular kind of dissociative state. Dr. Keiser further testified that another personality had, at the time of the killing, taken over the conscious personality. He further testified that the conscious personality would have no control over or memory *485 of what happened during a period when he was taken over by the other “evil” personality. The defendant thus, according to Dr. Reiser could not have distinguished right from wrong during the killing because he was virtually unconscious of what was happening.

DISCUSSION

PATENT ERROR REVIEW

A review of the record reveals no patent errors.

ASSIGNMENT ONE

In the first assignment of error, the defense contends that the trial court abused its discretion by allowing the state to enlarge and expand the grand jury indictment by permitting the constructive amendment of the indictment to include felony murder and to allow the introduction of evidence of other crimes.
This same argument was raised by the defendant in the district court. While venue of this case was in the Parish of Franklin, the defense filed a Motion to Quash and Opposition to Other Crimes Evidence in the district court. The defendant noted that the West Carroll Parish Grand Jury returned the following four indictments against him: (1) first degree murder of Deputy Sheriff Jeffery Gathings, while Gathings was engaged in the performance of his duties; (2) assisting escape; (3) conspiracy to commit first degree murder; and (4) conspiracy to commit aggravated escape. The defendant argued that the grand jury had the opportunity to charge him with first degree murder on additional grounds, but chose instead to limit the first degree murder charge to La.R.S. 14:30(A)(2), the killing of a human being when the offender has specific intent to kill or commit great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties. The defendant argued that, because first degree murder may only be charged by a grand jury, the prosecutor had no authority to expand that indictment.
The district court denied the motion and the defendant sought relief from the Second Circuit Court of Appeal. That court, in 21954-KW, on April 19, 1990, denied the writ as follows:
Applicant was indicted by grand jury for first degree murder, LSA-R.S. 14:30, pursuant to the “short form” indictment authorized by LSA-C.Cr.P. Art. 465. The indictment is not restricted to any particular subsection of Section 30. The language in the indictment which refers to the killing of Deputy Gathings while he was engaged in the performance of his duties is a statement of additional facts pertaining to the offense charged and is non-prejudicial surplusage which does not restrict or affect the sufficiency or validity of the indictment. LSA-C.Cr.P. Art. 465B and Art. 486. See State v. Neslo, 433 So.2d 73 (La.1983); State v. Williams, 480 So.2d 721 (La.1985). The defendant has been adequately informed of the details of the crime of which he is charged through the answer to the bill of particulars, the notices of intent to use evidence of other crimes, and the notice of intent to seek the death penalty. Furthermore, in the event of conviction, applicant will have an adequate remedy on appeal.
On June 22, 1990, in 90-KK-0998, the Louisiana Supreme Court also denied relief.
The short form provided in La. C.Cr.P. art. 465 for first degree murder is “A.B. committed first degree murder of C.D.” In the instant case, the grand jury indictment charged that the defendant “did willfully and unlawfully violate R.S. 14:30, in that he did commit the crime of First Degree Murder upon Deputy Sheriff Jeffery Gathings at which time Deputy Gath-ings was engaged in the performance of his lawful duties.” We agree with our brethren of the Second Circuit that the language in the indictment concerning Deputy Gath-ings being engaged in the performance of his duties at the time of the crime is nothing more than additional facts pertaining to the offense charged and non prejudicial surplusage which does not restrict or af- *486 feet the sufficiency or validity of the indictment.
The wording of the Second Circuit’s writ disposition permits reconsideration of this issue on appeal. However, we find no error in that court’s finding that the grand jury charged the defendant by a short form indictment, and that the indictment reference to Deputy Gathings having been killed while in the performance of his duties was mere surplusage.
Moreover, even if the grand jury intended to issue an indictment restricted to first degree murder under La.R.S. 14:80(A)(2), the introduction of other crimes evidence relative to aggravated burglary and aggravated escape would certainly have been admissible in this case as part of the res gestae of. the offense of first degree murder of a peace officer. This assignment of error has no merit.

ASSIGNMENT TWO

In the second assignment of error the defense contends that the trial court erred in sustaining the state’s objection to an expert witness being allowed to state his opinion per La.C.E. Art. 704 on the question of whether or not the defendant had the “specific intent” to kill.
During the direct examination of psychiatric expert, Dr. H.C. Townsley, defense counsel asked Dr. Townsley, “... have you formed an opinion today as to whether or not Mr. Bancroft had the specific intent to kill or to inflict great bodily harm on anybody?” The state objected to the question and argued that it required the witness to express an opinion as to an ultimate issue. Defense counsel argued that specific intent was an issue of fact, but not the ultimate issue of guilt or innocence. The court sustained the State’s objection, and advised defense counsel that he could “talk about his [the defendant’s] ability to make the specific intent, but not the specific question, that is the ultimate issue for the jury to decide.” Defense Counsel did not follow up with a question relative to the defendant’s ability to form the specific intent, but went on to question the witness on other matters.
In sustaining the State’s objection, the court relied upon La.C.E. Art. 704 and State v. Butler, 563 So.2d 976 (La.App. 1st Cir.1990), writ den., 567 So.2d 609 (La.1990), to support its ruling.
Louisiana Code of Evidence Article 702 provides the following rule for testimony by expert witnesses:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Louisiana Code of Evidence Article 704 provides the following rule for opinion testimony on an ultimate issue of fact:
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
Defendant argues that pursuant to Article 704, his expert should have been allowed to comment on whether he had the “specific intent” to kill at the time of the shooting. He argues that his question was a mental capacity question and that this case is analogous to State v. Birdsong, 452 So.2d 1236 (La.App.2d Cir.1984), writ den., 457 So.2d 1200 (La.1984), wherein the court found that the trial court properly admitted expert opinions as to whether the defendant could distinguish right from wrong at the time of the offense. We disagree.
Birdsong is distinguishable from the instant case, in that in Birdsong the opinions related to the ability of the defendant to distinguish right from wrong. Here, however, defense counsel asked the witness if the defendant “had the specific intent to kill or to inflict great bodily harm on anybody,” not if the defendant was capable of forming the specific intent. Because of the way the question was posed, the witness in *487 this ease was asked to draw a legal conclusion on an ultimate issue.
We agree with the trial court that this case is governed by the principles enunciated in Butler, supra, wherein the state sought a psychologist’s conclusion as to whether or not defendant met the legal definition of sanity with regard to his ability to determine right from wrong. Although that court found the state’s question improperly sought the witness’s opinion of the defendant’s legal sanity, it further found that the response did not give that legal opinion, which was an ultimate issue to be decided by the trier of fact. Thus, the court held that the trial court erred by overruling the defendant’s objection, but the error was harmless “in light of the response obtained.”
Similarly, in State v. Mitchell, 572 So.2d 800 (La.App. 4th Cir.1990), writ den., 576 So.2d 47 (La.1991), the defendant sought to elicit an opinion as to the defendant’s ability to form specific intent based on a hypothetical situation similar to the one presented by the case. On appeal this court found that the question posed to the witness “sought to elicit an opinion as to the ultimate issue of whether defendant had the specific intent to kill, which was a question solely within the province of the jury to determine.” Mitchell, supra at 806. For this reason we find no error in the trial court ruling sustaining the state’s objection. Thus this assignment of error has no merit.

ASSIGNMENT THREE

In the next assignment of error, the defense contends that the trial court erred in denying the defendant’s request for a mistrial during the testimony of Dr. Powell for the admission, over defense objection, of opinion testimony beyond the witness’s expertise. Dr. Powell was qualified without objection as a general practitioner. He also testified as a fact witness as the coroner for West Carroll Parish who came to the scene the night of the offense. Whenever the state asked Dr. Powell questions relating to the wound or the cause of death, the defense objected that the questions were beyond the expertise of the witness, in that he was not qualified as an expert in forensic pathology. Finally, when Dr. Powell described the wound and noted feeling a shotgun pellet behind the victim’s ear, defense counsel moved for a mistrial. Counsel argued that the witness was not qualified as a firearms expert. The court denied the mistrial, but admonished the jury to disregard any reference in the doctor’s previous testimony that what he felt behind the left ear was a shotgun pellet.
After a subsequent defense objection, the state was permitted to lay a foundation as to Dr. Powell’s limited training in forensic pathology as well as his experience with gunshot wounds. Defense counsel was then permitted to cross-examine the witness on his training and experience, and also on his bias as a friend of the victim.
The trial court has great discretion in deciding which witnesses are qualified as experts and in limiting the breadth and scope of expert testimony. Armstrong v. Lorino, 580 So.2d 528 (La.App. 4th Cir.1991), writ den., 584 So.2d 1166 (La.1991). Considering the training and experience of the witness and the relatively basic nature of disputed questions, the trial court did not abuse its discretion in admitting the testimony.
Finally, the testimony of Dr. Powell, admitted over defense objection, was corroborated by Dr. George McCormick, an expert qualified in forensic pathology, without objection. Thus, even if the admission of Dr. Powell’s testimony was erroneous, it did not prejudice the defendant.

ASSIGNMENT FOUR

In the next assignment of error, the defense contends that the trial court erred in refusing to give an instruction for negligent homicide even though it was a theory of the defense supported by some evidence. The defense cites State v. Polzin, 536 So.2d 667 (La.App. 3rd Cir.1988), writ den., 541 So.2d 870 (La.1989) and State v. Washington, 533 So.2d 392 (La.App. 4th Cir.1988) to support its contention that the trial court is required to instruct a jury as to *488 every theory of the defense supported by any inference from the evidence.
In State v. Polzin, the trial court refused to give an instruction requested by the defendant relative to the law of principals. The Third Circuit Court of Appeal held that the instruction given by the trial court was adequate to inform the jury on the law of principals and that the requested charge did not contain an accurate statement of the law. In State v. Washington, the trial court refused to give the defendant’s requested charges on justification. This court “found the substance of the requested charges was either covered in the general charge or not wholly correct, would have required qualification, or concerned the facts of the case.” Washington at 395.
In the instant case, the defense complains that there was evidence to support an accidental shooting, under which theory the defendant could have been found guilty of negligent homicide. The defendant was charged with first degree murder. La. C.Cr.P. art. 814 lists the only responsive verdicts for that charge as guilty, guilty of second degree murder, guilty of manslaughter and not guilty. The trial court instructed the jury on first degree murder and the responsive verdicts of second degree murder and manslaughter. If the jury did not find the defendant guilty beyond a reasonable doubt as to any of those offenses, it was properly instructed to find the defendant not guilty. There was no error in the trial court’s refusal to give an instruction on negligent homicide.

ASSIGNMENT FIVE

In the next assignment of error, the defense contends that the trial court erred in denying a new trial based on jury misconduct. The defendant maintains that the jury discussed the penalty phase of the trial during deliberation following the guilt phase of the trial, which led to a compromise verdict.
The record indicates that the jury returned a guilty verdict and was then given a lunch break. The record further indicates that, during the lunch break, the jury sent a message to the trial judge which apparently advised that they would not vote for the death penalty and so did not need to hear the sentencing phase of the trial. The defense argues that this decision by the jury was therefore made during its earlier deliberations.
There is no merit to this argument. The message was not given by the foreman or any other member of the jury prior to the lunch recess, leaving no reason to believe the penalty was discussed prior to the guilty verdict. Any error on the part of the jury for its discussion of the penalty during the lunch recess rather than after the sentencing phase of trial did not prejudice the defendant, as the jury recommended the lesser of the two possible legal sentences for the first degree murder conviction.

ASSIGNMENT SIX

Finally, the defense contends that the trial court erred in denying the defendant’s motion for new trial based on the fact that the verdict was contrary to the law and evidence. In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
The defense concedes that the defendant shot Deputy Gathings, causing his death. The state further proved beyond all possible doubt, several of the factors which may elevate an intentional killing from second degree murder to first degree murder: (1) the defendant was engaged in the perpetration of aggravated escape; (2) the defendant was. engaged in the perpetration of aggravated burglary; and (3) the presumably intended victim was a peace officer engaged in the performance of his lawful duties. The state also presented evidence that the defendant threatened a person besides the victim, although proof that the defendant had the intent to kill or inflict *489 great bodily harm on more than one person was not substantial. Although the defendant pled not guilty and not guilty by reason of insanity, the defense here disputes only the issue of specific intent, arguing that the defendant intended to bluff the deputy into releasing his friends from jail and the gun went off accidentally.
In State v. Marcello, 385 So.2d 244 (La.1980), the court noted that pursuant to La.R.S. 14:10 “specific intent” is defined as the “state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.”
The defense maintains that the state put forth no evidence relative to intent. We disagree. First, in the statement which was admitted into evidence, the defendant admits that he discussed with the Castons which weapon he should use on the victim to enable the escape, that he furnished the Castons with various weapons, and most importantly, before leaving for the jail he unhooked the boat from his stepfather’s truck and “got his brother’s shotgun and a sock full of shells.” The various tools which the defendant obtained for himself and the Castons were found outside the jail. The weapons were found after the defendant and the Castons were apprehended. Considering that the defendant armed himself and the Castons with tools and weapons, took with him ammunition for the shotgun, pointed a shotgun directly at the victim’s face at close range and pulled the trigger, a reasonable trier of fact could have concluded beyond a reasonable doubt that the defendant intended to kill or inflict great bodily harm on Deputy Gathings.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.

AFFIRMED.