| .MOORE, J.
Marquette Walker appeals his conviction of second degree murder and sentence of life in prison at hard labor without benefits. By three assignments of error he contends the evidence is insufficient to support the conviction and that the mandatory sentence is excessive. We affirm.

Factual Background

On the evening of October 16, 2001, a motorist noticed a body lying on the side of San Jacinto Street in Shreveport’s Wer-ner Park neighborhood. She called 911; paramedics discovered the victim, a white male in his late 20s, with a gunshot wound to the left side of his face. The victim was taken to LSU Health Sciences Center, where he was declared dead at 10:32 p.m. He was identified as 29-year-old Bryan Smith; police learned that he had been hired for the day at the Louisiana State Fair, and surmised that he was walking home from the Fairgrounds when somebody tried to rob him. Police recovered a .380 caliber cartridge case from the scene on San Jacinto.
Shortly after the shooting, police received a phone call from a Mrs. Smith on Woodford Street, several blocks from San Jacinto. Mrs. Smith reported that two men had just run through her yard. From Mrs. Smith’s teenage daughter, Natasha, Detective Rodney Demery learned that one of the men was Michael Wyatt and the other was the defendant, Marquette Walker (known on the street as “Pooh”), who lived on Quinton Street. Natasha testified that Wyatt was a white boy and Walker was black; Walker was carrying a gun and saying to Wyatt that he “shot the b íjí ^ if; »
Detective Demery interviewed Wyatt, age 15, who confirmed that the man with him the night before was Walker. Wyatt testified that on the ^afternoon of the *444 shooting, he and Walker were at the house of a friend (referred to only as “Pig”) on Regent Street, drinking beer and smoking marijuana. Walker had said he was “broke and needed some money” and had to “hit a lick,” which Wyatt explained as robbing somebody. When Wyatt went to leave, Walker said he would walk with him, but they first stopped at Walker’s house, where Walker went in. After this they walked toward Wyatt’s house. They noticed a white guy walking behind them on Fulton Street. Walker told Wyatt to turn left on San Jacinto; he did so, walked a short distance, and then heard some arguing behind him. One of the men said, “Give it up,” and then Wyatt heard a gunshot. Turning around, Wyatt saw the white man fall. Wyatt testified the victim never approached them or asked them for anything, and did not appear to be carrying any weapon.
Detective Demery next went to Walker’s address on Quinton Street. Walker’s girlfriend, Tara Ford, consented to a search. Crime scene investigators recovered a box of .380 cal. ammo from inside the house and various items from the garbage can outside.[1] Based on these items and the witnesses’ statements, Detective Demery obtained a warrant for Walker’s arrest.
Shortly after Walker was arrested on the evening of October 20, he waived his Miranda rights and gave a recorded statement which was played |sat trial. In this statement, Walker claimed that he and Wyatt were walking down San Jacinto, Wyatt with a gun in his waistband, when Bryan and several other men approached them; Bryan brandished a knife, poked at Walker and tried to rob him; in self-defense Walker grabbed the gun from Wyatt’s waistband and shot Bryan; then he and Wyatt ran off in different directions. Because this account was inconsistent with the physical evidence and the other witnesses’ statements, Detective Demery took another statement from Walker on October 23.
In the second statement,[2] which was also played for the jury, Walker initially maintained that Bryan had been the assailant, pulling a knife and trying to rob him, and that Wyatt had supplied the gun. After intense questioning, however, Walker emotionally admitted that he had gotten the gun from his little brother or cousin; Bryan had been walking behind them; he made up the story that Bryan was trying to rob them; Bryan was not wielding a knife; and after the shooting, he and Wyatt ran off together. He still denied taking anything from Bryan, but admitted that after the shooting, he threw the gun in a storm drain on West 77th Street.
Later that night, officers recovered a Hi-Point .380 semi-automatic handgun from a storm drain on the corner of West 77th and Wallace Streets. Richard Beigh-ley, an expert in firearms identification and comparison, examined the gun and fired reference shots from it. He concluded that the bullet extracted from the victim’s skull, and the shell casing found at the scene of the crime on San Jacinto, were both fired from the gun that officers *445 Lfished from the storm drain on West 77th.
Dr. George McCormick, the Caddo Parish coroner, testified that Bryan died from a gunshot wound that entered the left side of his face and cut his brain stem. Dr. McCormick also found stippling, or small red dots, around the wound, indicating that the gun was fired at close range; Mr. Beighley estimated less than two feet away. Autopsy photos admitted in evidence confirm the presence of red stippling. The autopsy report also disclosed that Bryan was missing his right foot and wearing a prosthetic lower leg.
As noted, the jury found Walker guilty as charged of second degree murder. The district court imposed the mandatory sentence of life in prison without benefit of parole, probation or suspension of sentence. Walker now appeals.

Discussion: Sufficiency of Evidence

By his first assignment of error, Walker urges the evidence is not constitutionally sufficient to support the verdict of second degree murder. He contends that the state’s case hinged entirely on the testimony of Michael Wyatt, who was not trustworthy. He also argues that the state failed to prove either specific intent to kill the victim, or that a robbery or attempted robbery occurred. Finally, he suggests that the killing was in self-defense.
The standard of appellate review is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a | ¡^reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921. This standard, now codified.in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The Jackson standard applies both to direct and circumstantial evidence. State v. Marcantel, 2000-1629 (La.4/3/02), 815 So.2d 50. The supreme court recently summarized the role of credibility in appellate review for sufficiency in State v. Davis, 2002-1043 (La.6/27/03), 848 So.2d 557:
[T]he task of an appellate court reviewing the sufficiency of the evidence is not to second-guess the credibility choices of the trier of fact “beyond * * * sufficiency evaluations under the Jackson standard of review.” State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). A victim’s or eyewitness’s testimony alone is therefore usually sufficient to support a verdict. State v. Bright, 98-0398, p. 24 (La.4/11/00), 776 So.2d 1134, 1148 [additional citations omitted ].
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27; State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
Second degree murder is the killing of a human being (1) when the | (¡offender has a specific intent to kill or to inflict great bodily harm, or (2) when the offender is engaged in the perpetration or attempted perpetration of, inter alia, armed robbery or simple robbery, even though he *446 has no intent to kill or inflict great bodily harm. La. R.S. 14:30.1 A. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Brooks, 36,855 (La.App. 2 Cir. 3/5/03), 839 So.2d 1075, writ denied, 2003-0974 (La.11/7/03), 857 So.2d 517.
Walker contends that the jury could not have accepted Wyatt’s account of the incident because Wyatt “has a problem with the truth.” Walker submits that Wyatt was a principal to the offense, as he was with Walker when the shooting occurred and was interrogated in custody, yet he was never charged with any crime. Walker argues that these factors make Wyatt’s account suspect. Even if the jury took Wyatt’s testimony at face value, Walker contends that Wyatt did not actually see him shoot or rob Bryan, thus making the case purely circumstantial.
On this record, we find no basis to set aside the jury’s rational credibility call. State v. Robertson, supra. The jury heard tape recordings of Walker’s two statements to Detective Demery. After first maintaining the shooting was a defensive act in response to a robbery at knifepoint, Walker ultimately admitted Bryan had no knife and did not attempt to rob him. He admitted telling Wyatt they had to “make up the story of him trying to rob us.” Walker even retracted his earlier claim that Wyatt was carrying |7the gun. By contrast, Wyatt’s account of Walker’s statements — before, during and after the crime — are consistent with the physical evidence; his testimony that they fled the scene together was corroborated by Mrs. Smith and her daughter Natasha. On this evidence the jury could reasonably reject Walker’s exculpatory claims and accept Wyatt’s consistent account of the crime. State v. Davis, 25,183 (La.App. 2 Cir. 10/27/93), 626 So.2d 800, writ denied, 93-2945 (La.2/25/94), 632 So.2d 762.
Walker further argues the state failed to prove he robbed or attempted to rob Bryan, thus defeating an essential of second degree murder. In support he shows that Wyatt did not personally observe any robbery, and the coroner testified that Bryan still had a necklace, watch and other valuables on his person at the autopsy.
Nonetheless, Dr. McCormick found, and the autopsy photos confirm, stippling near the gunshot wound. Mr. Beighley testified that the gun must have been within two feet of Bryan’s head. Aiming a gun at the victim’s face and firing it at close range are facts from which the jury could find specific intent to kill or inflict great bodily harm. State v. Seals, supra; State v. Brooks, supra. This satisfies the specific intent element of second degree murder.
Viewed in the light most favorable to the state, the evidence is sufficient to show, beyond a reasonable doubt, that Walker killed Bryan Smith with the specific intent to kill or inflict great bodily harm. Walker’s first assignment of error lacks merit.
| ¡^Excessive Sentence
By his second and third assignments, Walker urges the district court imposed an excessive sentence in violation of La. Const, art. 1, § 20. He argues that the court failed to particularize the sentence to fit both the offense and offender. State v. Jones, 398 So.2d 1049 (La.1981); State v. Robicheaux, 412 So.2d 1313 (La.1982). He concedes that the statute of conviction, R.S. 14:30.1 B, mandates life in prison without benefits, but urges that even a sentence within statutory limits must yield to constitutional considerations. State v. Sepulvado, 367 So.2d 762 (La. *447 1979); State v. Dorthey, 623 So.2d 1276 (La.1993).
Walker did not file a motion to reconsider sentence; thus he is relegated to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Winn, 37,-165 (La.App. 2 Cir. 5/14/03), 847 So.2d 68. Constitutional review turns on whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. Warfield, 37,616 (La.App. 2 Cir. 10/29/03), 859 So.2d 307.
The district court did not state any reasons for imposing the mandatory sentence, and was not required to do so. State v. Koon, 31,177 (La.App. 2 Cir. 2/24/99), 730 So.2d at 504; State v. Rose, 606 So.2d 845 (La.App. 2 Cir.1992). Walker has adduced no facts to warrant a departure from the mandatory life sentence. The facts instead show that Walker shot Bryan in the face at close range, soon after saying he needed to “hit a lick.” He implausibly accused the victim, a partially disabled man, of trying to rob |ahim at knifepoint. He tried to dispose of the weapon by throwing it down a gutter. On these facts, the mandatory sentence of life at hard labor without benefits does not shock our sense of justice. These assignments lack merit.

Conclusion

We have reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2). For the reasons expressed, Marquette Walker’s conviction and sentence are affirmed.
AFFIRMED.

. These items included three empty Frito-Lay corn chips bags and two 24-ounce Budweiser beer cans. A police report filed in discovery stated that shortly before the shooting, Bryan had stopped at a convenience store near the Fairgrounds and bought two bags of Frito-Lay corn chips and two 24-ounce cans of Budweiser. However, fingerprints lifted from the items seized from the garbage can could not be linked to Walker, and evidence concerning the convenience store purchases was not introduced at trial.

. Although both statements were recorded and played at trial, they were not transcribed into the official record.