# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-968

**STATE OF LOUISIANA**

**VERSUS**

**KEVIN WARE**

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT,
PARISH OF ALLEN, CR-05-4158
HONORABLE JOEL G. DAVIS, DISTRICT JUDGE

**********

## J. DAVID PAINTER
## JUDGE

**********

Court composed of Billy Howard Ezell, J. David Painter, and James T. Genovese.

**AFFIRMED.**

**Douglas L. Hebert, Jr., District Attorney**
**Sherron Ashworth, Assistant District Attorney**
**Thirty-third Judicial District**
**P.O. Box 839**
**Oberlin, LA 70655**
**Counsel for State of Louisiana**

**W. Jarred Franklin, Attorney at Law**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA 71112**
**Counsel for Defendant-Appellant:**
    **Kevin Ware**

**PAINTER, Judge.**

Following a jury trial, Defendant, Kevin Ware, was found guilty of second degree murder, in violation of La.R.S. 14:30.1. Following the denial of his motions for post-judgment verdict of acquittal and for new trial, Defendant was sentenced to life in prison without the benefit of probation, parole, or suspension of sentence. Defendant now appeals alleging, among other things, that the evidence was insufficient to prove his guilt beyond a reasonable doubt and that his sentence is excessive. For the reasons that follow, we affirm Defendant's conviction and sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 24, 2004, Defendant executed a bill of sale of his trailer home to the victim, Cleveland Burnitt,[1] and sometime thereafter moved the trailer onto Burnitt's property. Defendant continued to live in the trailer. Burnitt saw Karen Kibodeaux, Justice of the Peace for Ward Two, District Thirty-Three ("JOP Kibodeaux"), in October of 2005, to begin the process of evicting Defendant from the trailer. Thereafter, in late October 2006, Burnitt served Defendant with a notice to vacate the trailer that had been issued by JOP Kibodeaux. Testimony was offered by several witnesses that in the weeks following receipt of the notice to vacate, Defendant became upset and depressed because of Burnitt's decision to evict him. Then, on the evening of November 7, 2005, Defendant entered Burnitt's home and killed him.

On December 15, 2005, Defendant was indicted by a grand jury for the offense of second degree murder, in violation of La.R.S. 14:30.1. On March 20, 2007, at the conclusion of a jury trial, Defendant was found guilty. Defendant filed motions for

---

[1]The victim is referred to in the record by the name "Burnitt," and also "Burnett."

post-verdict judgment of acquittal and for a new trial on June 12, 2007; on the same day, the trial court denied the motions and sentenced Defendant to life in prison without the benefit of probation, parole, or suspension of sentence.

At his sentencing hearing on June 12, 2007, Defendant motioned orally for an appeal. In his appeal to this court, Defendant alleges the following assignments of error:

> 1. There is insufficient evidence to prove the guilt of Defendant for the offense of second degree murder beyond a reasonable doubt.
>
> 2. The trial court erred in allowing the state's expert to express an opinion as to the guilt of Defendant.
>
> 3. The trial court erred in allowing a state witness to testify as to blood spatter evidence when the witness was not qualified as an expert.
>
> 4. The trial court erred in allowing gruesome photographs into evidence.
>
> 5. The sentence imposed is excessive for this offense and this offender.

Finding these assignments of error to be without merit for the following reasons, we affirm Defendant's conviction and sentence for second degree murder.

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After a thorough review of the record, we note that the trial court sentenced Defendant the same day it denied his motion for post judgment verdict of acquittal/motion for new trial. The language of La.Code Crim.P. art. 873 requires a delay of at least twenty-four hours between the denial of a motion for new trial and sentencing. However, we find that the error is harmless as Defendant received a mandatory life sentence. *See State v. Porter*, 99-1722 (La.App.

2

3 Cir. 5/3/00), 761 So.2d 115; *State v. Williams*, 617 So.2d 557 (La.App. 3 Cir.), *writ denied*, 623 So.2d 1331 (La.1993).

*Sufficiency of the Evidence*

In his first assignment of error, Defendant alleges that there was not sufficient evidence presented at trial to allow a jury to find him guilty of the offense of second degree murder beyond a reasonable doubt. Specifically, he urges that he did not possess the requisite state of mind to be found guilty of second degree murder.

In *State v. Touchet,* 04-1027, pp. 1-2 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 902, this court stated:

> With regard to sufficiency of the evidence, this court set forth as follows in *State v. Lambert,* 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27:
>
>> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King,* 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).
>
> In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In order for this court to affirm a conviction, the record must reflect that the State has satisfied this burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

Louisiana Revised Statutes 14:30.1 states, in pertinent part, "[s]econd degree murder is the killing of a human being: (1) When the offender has a specific intent to

3

kill or inflict great bodily harm . . . ." Accordingly, at trial, the State had the burden of proving beyond a reasonable doubt that Defendant had the specific intent to kill or inflict great bodily harm upon the victim.

Defendant, at trial and in his brief, does not deny the fact that he caused the victim's death; however, he asserts that he did not possess the requisite specific intent, as defined in La.R.S. 14:30.1, to be convicted of second degree murder.

The State, in discussing the issue of specific intent, cites *State v. Brown*, 41,386, p. 4 (La.App. 2 Cir. 9/20/06), 940 So.2d 100, 102, *writ denied*, 06-2627 (La. 6/1/07), 957 So.2d 172, wherein the court stated:

> Specific intent is a state of mind and need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Graham*, 420 So.2d 1126 (La.1982); *State v. Taylor*, 621 So.2d 141 (La.App. 2d Cir.1993), *writ denied*, 93-2054 (La. 2/11/94), 634 So.2d 371. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); *State v. Lindsey*, 543 So.2d 886 (La.1989), *cert. denied*, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); *State v. McCray*, 621 So.2d 94 (La.App. 2d Cir.1993). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. *State v. Brown*, 618 So.2d 629 (La.App. 2d Cir.1993).

In support of Defendant's assertion, testimony was adduced at trial that he had not taken any weapons to the victim's home on the night of the victim's death, had never threatened the victim, and that the victim and Defendant overall had a good relationship. Detective Peggy Kennedy with the Allen Parish Sheriff's Department, who investigated Burnitt's murder, testified at trial that she was not aware that Defendant had brought any weapons into Burnitt's home on the night in question. Glenn Ware, Defendant's half-brother, testified that on the night in question, Defendant visited with him and was upset about being evicted by Burnitt. However, Glenn also testified that Defendant never said that he was going to harm or kill Burnitt. Glenn also testified that he did not believe Burnitt was in any way in danger

4

from being harmed by Defendant. Another of Defendant's brothers, Ricky Ware, testified at trial as to his perception of the relationship between Defendant and Burnitt prior to Hurricane Rita and stated: "Well, we all had like a father and son relationship. We all called him Pops[,] and he called us sons. I thought that we all had a fine relationship going at that time." Defendant urges that in light of the testimony noted above, he could not have had the specific intent necessary to be convicted of second degree murder.

On the other hand, the State was able to adduce testimony at trial that Defendant was upset about being evicted from the trailer where he had been residing. Trial testimony further reflected that after Burnitt served Defendant with a notice to vacate the property (the trailer), Defendant returned the notice to Burnitt with a handwritten note on the back stating, "Warning No Trespassing Violators will be Prosecuted. . . ." Moreover, testimony was offered by JOP Kibodeaux that Burnitt told her that he felt afraid based on the note that Defendant wrote on the back of the notice to vacate and because Defendant had a temper. Furthermore, Michael Spears, an employee at Dunham-Price Concrete who had performed some work for Burnitt, testified that the week before Burnitt was killed, he (Spears) ran into Defendant and that in a conversation between the two, Defendant stated, "I'm going to go get a two-by-four or a stick and beat that old man to death." In response to Defendant's statement, Spears told Defendant, "You know that you really don't want to do that." Finally, Dr. Colie Trant, a forensic pathologist who conducted the autopsy of the victim, testified at trial that Burnitt was beaten for approximately ten minutes prior to being strangled to death and that, as a result of the beating, Burnitt sustained at least thirty-five distinct wounds or injuries each occurring by its own blow. Dr. Trant

5

also testified that the ligature strangulation that ultimately caused Burnitt's death took up to four minutes.

The only witness to the crime was Defendant, and he did not testify at trial. However, in opening statements, defense counsel admitted that Defendant caused Burnitt's death. Further, in his brief to this court, Defendant admits going to Burnitt's home on the night of the offense to discuss why he was being evicted. It is also averred by Defendant that during this visit, Burnitt, without provocation, struck Defendant on the lip. Defendant claims Burnitt's actions sent him into a rage, where the two men fought, and Burnitt suffered significant injuries resulting in his death.

The court in *Brown*, addressing the issue of duties of the trier of fact, stated:

> In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. White*, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, *writs denied*, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048.

> Under La. R.S. 14:30.1, second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Specific intent is a state of mind and need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Graham*, 420 So.2d 1126 (La.1982); *State v. Taylor*, 621 So.2d 141 (La.App. 2d Cir.1993), *writ denied*, 93-2054 (La.2/11/94), 634 So.2d 371.

*Brown*, 940 So.2d at 102.

Based on the court's holding in *Brown*, Defendant's admissions in his brief that he caused Burnitt's death, the testimony of Dr. Trant that the victim was beaten for ten minutes resulting in at least thirty-five distinct wounds and strangled to death, which strangulation was estimated to have taken up to four minutes, we find that sufficient evidence was submitted by the State for a jury to find that Defendant possessed the requisite state of mind to be found guilty of the crime of murder in the second degree.

6

*Expert Testimony*

In his second assignment of error, Defendant alleges that the trial court erred in allowing the State's expert to express an opinion as to the guilt of Defendant. While we find that the trial court did err in allowing the State's expert witness to testify as to Defendant's guilt, we further find that this error is harmless.

Louisiana Code of Evidence Article 704 states:

> Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.

The court in *State v. Bancroft*, 620 So.2d 482 (La.App. 4 Cir.), *writ denied*, 625 So.2d 1062 (La.1993), affirmed the decision of the trial court sustaining the State's objection when defense counsel asked an expert witness if the defendant in that case had the requisite specific intent for the offense charged, first degree murder. The court stated :

> [D]efense counsel asked the witness if the defendant "had the specific intent to kill or to inflict great bodily harm on anybody," not if the defendant was capable of forming the specific intent. Because of the way the question was posed, the witness was asked to draw a legal conclusion on an ultimate issue.

*Id.* at 486-87.

In his brief to this court, Defendant refers to the following testimony as a basis for his argument:

> [State] :        Specifically, sir, in this case, have I asked you to render an opinion as to whether or not Kevin Ware had the specific intent to kill or commit great bodily harm on Mr. Cleveland Burnett [sic] around about the time of the Murder.
>
> [Dr. Robertson, clinical psychologist]:        Yes, you have.

7

At that point in the proceedings, defense counsel objected based on La.Code Evid. art. 704.[2] The trial court overruled the objection, and the State continued to question Dr. Robertson regarding the materials he reviewed in connection with evaluating Defendant's conduct and mental state. Subsequent to this line of questioning, the following colloquy took place between the State and Dr. Robertson:

> [State]: Taking all of that into consideration, Doctor, and talking about events taking place prior to, during and after the death of Mr. Cleve [sic], do you have an opinion as to whether or not at the time of his death Kevin Ware possessed the specific intent to kill or inflict great bodily harm on Mr. Cleveland [sic]?
>
> [Mr. Deshotels]: Objection, Your Honor, subject to. . . .
>
> [The Court]: Your objection is noted and overruled.
>
> [Dr. Robertson]: It is my opinion that he did.

Based on the foregoing testimony, it is clear that the State elicited testimony from Dr. Robertson in violation of La.Code Evid. art. 704.

Nevertheless, this court in *State v. Pickett,* 03-1492 (La.App. 3 Cir. 5/26/04), 878 So.2d 722, discussed conducting a harmless error analysis where testimony was introduced in violation of La.Code Evid. art. 704. In conducting its harmless error analysis, this court held:

> Given this evidence, a reasonable jury could have concluded that the Defendant was at the scene of the crime. Even without the expert's opinion, the answer to the ultimate issue in the case was obvious and the guilty verdict was unattributable to the erroneous testimony. Therefore, the expert's opinion was harmless error.

*Id.* at 730. In *Pickett*, the defendant gained entry into to the victim's home by breaking a window and proceeded to beat, shoot, and kill her. Uncontroverted physical evidence was presented at trial including the defendant's blood on a door

---

[2]While defense counsel does not actually cite to La.Code Evid. art. 704, the objection in substance argues this code provision.

panel that was kicked in at the victims home, the victim's blood on the defendant's shoe, glass embedded in the shoe similar to the type of glass at the victim's home, and a shoe print similar to the defendant's shoes.

In the instant case, there is no issue as to who caused the Burnitt's death, as Defendant admitted this fact; thus, the only question is whether he had the specific intent to be convicted of second degree murder. We have already found that there was sufficient evidence to show that Defendant, in fact, had the specific intent to be convicted of second degree murder, notwithstanding the testimony of Dr. Robertson. Thus, as in *Pickett*, not considering the expert testimony that was erroneously admitted, the jury in the instant matter was presented with sufficient evidence to find that Defendant had the specific intent to be convicted of second degree murder, particularly in light of the testimony of Dr. Trant regarding the extensive injuries sustained by Burnitt. Furthermore, the verdict was unattributable to Dr. Robertson's testimony, and thus, admission of his testimony at trial was harmless error.

*Blood Spatter Evidence*

In his third assignment of error, Defendant alleges that the trial court committed reversible error by allowing the State's witness to testify about blood spatter evidence when the witness was not qualified as an expert. We find this allegation is also without merit.

In support of his proposition, Defendant cites La.Code Evid. art. 702, which states: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Defendant also cites several cases

9

wherein witnesses who testified and offered opinions about blood spatter evidence were qualified as experts in that field.

In response, the State submits that Deputy Willis was not offering expert testimony as a blood spatter expert but was testifying as to what he observed at the crime scene. The State cites La.Code Evid. art. 701,which states in, pertinent part:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
>
> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

In further support of its position, the State cites *State v. McFadden*, 476 So.2d 413 (La.App. 2 Cir. 1985), *writ denied*, 480 So.2d 739 (La.1986), in which the court admitted the testimony of an investigating officer with twenty-five years of police experience, where that officer was not qualified as a blood expert but was allowed to testify about blood evidence. The second circuit held:

> The trial court did not abuse its sound discretion by permitting Lt. Hood, a knowledgeable and experienced investigator, to make reasonable inferences from his own observations at the crime scene whether a particular item of blood was a drop, smear, flow, or pool.

*Id.* at 420.

At trial, Grant Willis, Chief Deputy with the Allen Parish Sheriff's Office, who participated in the investigation of Burnitt's murder and was on the scene of the crime, offered testimony describing crime scene photos of blood stains. Testimony at trial established that Deputy Willis had been in law enforcement for over twenty years, had been a lead investigator in nine or ten homicide cases, and assisted in up to twenty-five other homicide cases. Further testimony revealed that Deputy Willis had received varied training throughout his career in law enforcement including: a

week-long crime course at the Calcasieu Academy; training in pathology, blood stain analysis, and homicide investigations at the University of New Orleans; and a two-week course in crime scene investigations while with the State Police. At trial, when Defendant objected to Deputy Willis' testimony, the State responded that he was only describing pictures of the crime scene. In his brief to this court, Defendant acknowledged that the State never sought to qualify Deputy Willis as an expert in blood spatter analysis.

Following the reasoning of *McFadden* and in light of Deputy Willis' experience and training in law enforcement, there was no error in allowing his testimony at trial. His testimony merely described photos of the crime scene that depicted various blood stains. Accordingly, Defendant's assignment of error in this respect is without merit.

*Gruesome Photographs*

In his fourth assignment of error, Defendant alleges that the trial court erred in allowing gruesome photographs into evidence. Defendant argues that the photos admitted into evidence were more prejudicial than probative and that under La.Code Evid. art. 403, the photos should have been excluded. We find this assignment of error to be without merit.

Louisiana Code of Evidence Article 403 states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." However, in *State v. Robertson,* 97-177, p. 29 (La. 3/4/98), 712 So.2d 8, 32, *cert. denied*, 525 U.S. 882, 119 S.Ct. 190 (1998) (citations omitted), in affirming the trial court's admission of various photos depicting the victim of a homicide, the supreme court stated:

11

[T]he State is entitled to the moral force of its evidence, and post-mortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing cause of death and location and placement of wounds, and to provide positive identification of the victim.

. . . .

Any excessiveness in the number of photographs introduced is solely a result of the numerosity and multiple locations of the wounds inflicted on [the victims]. The State is entitled to use photographs to show the location and nature of all the victim's wounds.

In the instant case, Defendant complains about various pictures of the wounds sustained by the victim and pictures of his corpse as it was discovered at the scene of the crime. At trial, in response to Defendant's objection to the photos at issue, the State averred that the photos were being introduced to depict the various injuries that Burnitt sustained and further stated that the jury had the right to see the nature of the injuries in light of the fact that Defendant was alleging self-defense. In light of La.Code Evid. Art. 403 and the court's ruling in *Robertson*, the trial court did not err in admitting the photos into evidence as their probative value outweighed their prejudicial impact. Accordingly, this assignment of error is without merit.

*Excessiveness of Sentence*

In his final assignment of error, Defendant alleges that the sentence imposed is excessive for this offense and this offender. As Defendant's only allegation is that his sentence is excessive, we evaluate this claim as a bare claim of excessiveness.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of

12

sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 01-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

In order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

[A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App.1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Defendant was convicted of second degree murder in violation of 14:30.1. The sentence for second degree murder is life in prison without benefit of parole, probation, or suspension of sentence. Defendant was sentenced to life in prison without benefit of parole, probation, or suspension of sentence. Testimony at trial was adduced that Defendant severely beat Burnitt for ten minutes prior to strangling him to death. Further, Burnitt sustained at least thirty-five distinct injuries during the beating.

Louisiana courts have consistently held that the sentence of life in prison without benefit of parole, probation, or suspension of sentence is neither constitutionally cruel or unusual, nor excessive. *See State v. Allen*, 03-2156 (La.App. 4 Cir. 5/19/04), 876 So.2d 122, *writ denied*, 04-1704 (La. 11/19/04), 888 So.2d 194, and *State v. Walker*, 38,254 (La.App. 2 Cir. 4/7/04), 870 So.2d 442. Accordingly, we find Defendant's claim of excessiveness to be without merit.

## DECREE

For all of the foregoing reasons, Defendant's conviction on the charge of second degree murder and his sentence to life in prison without benefit of parole, probation, or suspension of sentence are affirmed.

**AFFIRMED.**